# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 14-40062-01-DDC** |
| **DAVID G. PFLUM (01)** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

On January 26, 2017, a jury convicted defendant David G. Pflum of two charges:

(1) attempting to evade and defeat the payment of income tax, a violation of 26 U.S.C. § 7201,

and (2) corruptly endeavoring to obstruct and impede the due administration of the Internal

Revenue laws, a violation of 26 U.S.C. § 7212(a).  Doc. 179.

Mr. Pflum has filed several post-trial motions that the court considers below.  Through

counsel, Mr. Pflum filed a Motion for Judgment of Acquittal.  Doc. 182.  This motion moves the

court to set aside the jury's verdict under Fed. R. Crim. P. 29(c) because, Mr. Pflum contends,

the government presented insufficient evidence for a rational jury to find him guilty beyond a

reasonable doubt of the crimes charged.  Mr. Pflum also has filed several pro se motions after the

trial.  Docs. 188, 196, 203.  His pro se motions ask the court for various forms of relief.  They

include dismissal of the Indictment, an order releasing him from custody, and transfer of the case

to another judicial district.  The government has responded to some of Mr. Pflum's motions,

filing Motions for Orders denying them.  Docs. 197, 199.

For reasons explained below, the court denies all of Mr. Pflum's post-trials motions and

grants the government's motions.  In sum, the government presented sufficient evidence for a

rational jury to find Mr. Pflum guilty beyond a reasonable doubt of the two counts of conviction. And, as the court already has explained in other orders denying similar motions, Mr. Pflum's arguments for dismissal of the Indictment are meritless. The court repeatedly has rejected Mr. Pflum's assertion that the court lacks subject matter and personal jurisdiction. Mr. Pflum nonetheless makes the same assertions again in his pro se post-trial motions. But, he provides no reason why the court should reconsider or set aside its earlier rulings. The court explains its conclusions in greater detail below.

## I.    Factual and Procedural Background

On June 4, 2014, a grand jury returned a two-count Indictment charging Mr. Pflum with (1) attempting to evade and defeat the payment of income tax in violation of 26 U.S.C. § 7201; and (2) corruptly endeavoring to obstruct or impede the due administration of the Internal Revenue laws in violation of 26 U.S.C. § 7212(a). Doc. 1. On May 4, 2016, a grand jury returned a First Superseding Indictment against Mr. Pflum, charging the same offenses, but expanding the dates when he allegedly engaged in illegal conduct to include additional tax years. Doc. 100.

After the grand jury returned the original Indictment in June 2014, Assistant Federal Public Defender Andrew J. McGowan entered his appearance for Mr. Pflum. Doc. 6. During Mr. McGowan's representation, Mr. Pflum asked several times for the court to discharge Mr. McGowan and allow the defendant to represent himself. *See*, *e.g.*, Docs. 25, 53. On November 30, 2015, the court granted Mr. Pflum's request, allowed him to proceed pro se, and appointed Mr. McGowan as standby counsel. Doc. 55.

On March 16, 2016, Mr. Pflum filed another motion asking the court to withdraw Mr. McGowan's representation as standby counsel. Doc. 76. But, at a hearing on the motion, Mr.

Pflum reversed course yet again, announcing that he no longer wished to represent himself. Doc. 89. After conducting an extensive colloquy to discern whether Mr. Pflum understood the consequences of his decision, the court found that Mr. Pflum had waived his right to self-representation. *Id.* So, the court reappointed Mr. McGowan as counsel for Mr. Pflum. *Id.*

Five days later, Mr. McGowan filed a motion to withdraw from this representation because Mr. Pflum had made serious allegations about Mr. McGowan's loyalties, including that he was conspiring with the prosecution to undermine Mr. Pflum's constitutional rights. Doc. 90 at 8. Mr. McGowan asked the court to grant his motion to withdraw because of this conflict of interest, irreconcilable differences, and a breakdown in communications. *Id.* The court granted Mr. McGowan's motion and allowed him to withdraw. Doc. 94. The court then appointed Robin Fowler to represent Mr. Pflum. Doc. 97.

On November 17, 2016, Mr. Pflum filed a pro se motion asking the court to terminate Mr. Fowler's representation. Doc. 128. The court held a hearing on the motion and conducted yet another detailed colloquy with Mr. Pflum about his right to counsel. Doc. 131. The court again concluded that Mr. Pflum had waived his right to counsel, and it permitted Mr. Pflum to represent himself with Mr. Fowler serving as standby counsel. *Id.*

The court set the case for trial beginning on Tuesday, January 17, 2017. The court held a limine conference on January 10, 2017. Mr. Pflum appeared in person at the conference, still representing himself with Mr. Fowler serving as standby counsel. Doc. 153. The following week, the court called the case for trial, as scheduled, on January 17, 2017, at 9:01 a.m. Doc. 156. Counsel for the government and Mr. Fowler appeared. *Id.* But Mr. Pflum did not. *Id.* The court directed the clerk to issue a warrant to the United States Marshal to secure Mr. Pflum's appearance for trial. *Id.* Mr. Pflum was arrested the next day, and he appeared for a status

conference. Mr. Fowler again appeared as standby counsel. Doc. 165. Mr. Pflum changed

course again, asking the court to reappoint Mr. Fowler so he could try the case and otherwise

serve as his counsel going forward. *Id.* The court conducted another colloquy with Mr. Pflum

and concluded that he had waived his right to represent himself in the case. *Id.* So, the court

reappointed Mr. Fowler as counsel. *Id.* The court also scheduled the jury trial to begin on

Friday, January 20, 2017, at 9:00 a.m.

The jury trial began, as scheduled, on January 20. Mr. Fowler represented Mr. Pflum

throughout the trial. Among other things, the government presented the following evidence at

trial. In 2004, a jury convicted Mr. Pflum of multiple tax code violations, including three counts

of failing to file income tax returns for the tax years 1997 through 1999. Judgment, *United

States v. David G. Pflum*, No. 04-40008-01-SAC (D. Kan. Dec. 10, 2004), ECF No. 94. As a

condition of supervised release, United States District Judge Sam A. Crow ordered Mr. Pflum to

file "truthful and complete federal and state income tax returns in a timely manner, according to

law, and cooperate with the Internal Revenue Service and state tax authorities regarding any

manner related to the defendant's past or present tax liability during the term of supervision." *Id.*

at 5.[1]

In 2008, the United States Probation Officer ("USPO") asked Mr. Pflum to provide

certain financial information as part of his efforts to comply with a condition of his supervised

release. In response, Mr. Pflum submitted a net worth statement that listed his only asset as

$472.75 in cash and claimed that he had no taxable income. After the USPO questioned the

information provided, Mr. Pflum submitted a revised net worth statement that identified

substantial monthly income and real estate holdings.

On September 19, 2008, Judge Crow issued an order modifying Mr. Pflum's conditions

---

[1]     The government introduced this evidence at trial as Exhibit 1.

of supervised release.  Order Modifying Conditions of Supervised Release, *United States v. David G. Pflum*, No. 04-40008-01-SAC (D. Kan. Sept. 19, 2008), ECF No. 149.  Among other conditions, Judge Crow ordered Mr. Pflum to "provide proof of filing a truthful and complete income tax return for tax years from 1997 to 2007, to the U.S. Probation Officer and US Attorney's office prior to December 11, 2008."  *Id.* at 2.[2]  Mr. Pflum later filed federal income and employment tax returns for tax years 1997 through 2007.  These tax returns reported Mr. Pflum's total income as $7,700,494.00 and claimed he owed $2,663,854.23 in federal income and employment taxes.  In 2008, the Internal Revenue Service ("IRS") attempted to collect the taxes that Mr. Pflum owed the government but never had paid.  As part of this effort, the IRS issued liens against Mr. Pflum's real estate holdings and levies against the income he was receiving.

At trial, IRS Special Agent Henry Herron testified about his investigation into Mr. Pflum's tax filings and payments.  Through Agent Herron's testimony, the government introduced an exhibit containing a two-page summary chart showing the information Mr. Pflum had provided on the tax returns he had signed and filed for tax years 1997 through 2007.  The chart shows that the total amount of income reported by Mr. Pflum on those tax returns exceeds $7.7 million.  The chart also includes Agent Herron's calculation that Mr. Pflum owed more than $2.6 million in federal taxes for those tax years.

The government also presented evidence that Mr. Pflum sold his business, Coil Springs Specialties, to his son in 2006.  The government introduced a purchase agreement dated October 12, 2006.  This agreement provides that Mr. Pflum's son had agreed to purchase the business for $2,280,018.74.  Under a separate secured promissory note, the business agreed to pay the purchase price to Mr. Pflum in monthly installment payments of $16,321.93, beginning January

---

[2]     The government introduced this evidence at trial as Exhibit 4.

31, 2007. The government thus asserted that Mr. Pflum had received income from his ownership interest in Coil Spring Specialties until October 12, 2006, and maybe even as late as January 31, 2007. The government also asserted that Mr. Pflum has received more than $16,000 each month in installment payments from the sale of his business. Indeed, Mr. Pflum identified proceeds that he received from the business sale in the revised net worth statement that he submitted to the USPO in 2008. On that statement, Mr. Pflum reported the sale of Coil Spring Specialties with a monthly payment of $15,000.

The government also introduced into evidence a Judgment that our court entered against Mr. Pflum on May 16, 2013. Judgment in a Civil Case, *United States v. Pflum*, No. 12-4115-JTM (D. Kan. May 16, 2013), ECF No. 21.[3] This Judgment reduced Mr. Pflum's unpaid federal tax liabilities to a judgment against him in the amount of $6,408,357.25.

The government asserted at trial that Mr. Pflum had evaded and obstructed the payment of federal tax in five different ways. First, the government asserted that Mr. Pflum concealed his net worth when he provided inaccurate information to the USPO in 2008. Second, the government asserted that Mr. Pflum attempted to cloud property titles. To support this argument, the government introduced into evidence several deeds that clouded the title of property subject to government foreclosure. The government contended that Mr. Pflum had created and recorded the deeds. Third, the government asserted that Mr. Pflum had submitted false documents. The government introduced into evidence several documents created by Mr. Pflum, including documents showing purported tax payments to the IRS.[4] Fourth, the government asserted that Mr. Pflum had sent threatening and misleading letters and emails. The

---

[3]    The government introduced this evidence at trial as Exhibit 23.

[4]    The government introduced this evidence at trial as Exhibits 16 and 18.

government supported this assertion by introducing several pieces of correspondence authored by Mr. Pflum.[5]  Finally, the government asserted that Mr. Pflum sent altered IRS documents.  To support this argument, the government presented Release of Levy forms that, it contended, Mr. Pflum had altered. [6]

After the court submitted the case, the jury deliberated and returned guilty verdicts for both of the counts charged in the Indictment.  Doc. 179.  The jury completed a special verdict form for each charge.  The jury agreed that Mr. Pflum had committed affirmative acts to evade the payment of income taxes by submitting false financial statements, instructing third parties to ignore IRS collection efforts, and threatening legal action against third parties who complied with the IRS's collection efforts.  *Id.* at 2–3.  The jury also agreed that Mr. Pflum committed affirmative acts to obstruct the due administration of the Internal Revenue laws by submitting false financial statements, filing a grant deed attempting to transfer ownership interest of property located at 500 MacDonald, San Juan, Washington, instructing third parties to ignore IRS collection efforts, and threatening legal action against third parties who complied with the IRS's collection efforts.  *Id.* at 6–7.

After trial, Mr. Pflum filed a Motion to Proceed Pro Se at Sentencing.  Doc. 184.  The court held a hearing on the motion on March 13, 2017.  At that hearing, the court conducted yet another colloquy about the potential disadvantages of a defendant representing himself.  The court granted Mr. Pflum's motion and so he is representing himself as the case proceeds into the sentencing phase.  Doc. 187.  The court also reappointed Mr. Fowler as standby counsel.  *Id.*

The court now turns to the post-trial motions that Mr. Pflum has filed, both through counsel and pro se.

---

[5]        The correspondence includes the government's Exhibits 10–15, 19–22, 32, 37.

[6]        The government introduced the Release of Levy forms as Exhibits 17 and 17-1.

## II. Motion for Judgment of Acquittal

When Mr. Fowler still represented Mr. Pflum, he filed a Motion for Judgment of Acquittal. Doc. 182. The motion asks the court to set aside the jury's guilty verdicts on both counts and acquit Mr. Pflum under Fed. R. Crim. P. 29(c). This motion asserts that the government presented insufficient evidence to prove that Mr. Pflum actually earned income during the tax years alleged in the Indictment. And thus, Mr. Pflum argues insufficient evidence existed to support the jury's verdicts that he attempted to evade the payment of income taxes (as Count 1 charged) or that he corruptly endeavored to obstruct or impede the due administration of the Internal Revenue laws (as Count 2 charged).

As described above, Mr. Pflum asked the court to terminate Mr. Fowler's representation after he had filed the Motion for Judgment of Acquittal on Mr. Pflum's behalf. At a hearing on March 13, 2017, the court granted Mr. Pflum's request, allowing Mr. Pflum to proceed pro se at sentencing and reappointing Mr. Fowler as standby counsel. Doc. 187. Also at this hearing, the court ordered Mr. Pflum to "file a statement stating whether he stands on the Motion for Judgment Notwithstanding Verdict (Doc. 182) or chooses to file a new motion by March 27, 2017." *Id.* at 1. Mr. Pflum never filed any statement expressing his position on the already-filed Motion for Judgment of Acquittal.

The government has filed a Motion for Order asking the court to deny Mr. Pflum's Motion for Judgment of Acquittal. Doc. 197. The government asserts that Mr. Pflum never has affirmed or incorporated the Motion for Judgment of Acquittal into the pro se motions he has filed after terminating Mr. Fowler's representation. The government thus argues that Mr. Pflum has abandoned the arguments raised in the Motion for Judgment of Acquittal. And, the

government asks the court to issue an order denying the Motion for Judgment of Acquittal for this reason.

The court agrees with the government that Mr. Pflum appears to have abandoned the arguments asserted in the Motion for Judgment of Acquittal. The court thus denies the motion for this reason. But the court also denies the motion for another reason: the government presented sufficient evidence for a reasonable jury to find Mr. Pflum guilty beyond a reasonable doubt of the crimes charged. The court thus denies Mr. Pflum's Motion for Judgment of Acquittal under Fed. R. Crim. P. 29(c). The court explains why below.

### A.  Legal Standard

On a motion for judgment of acquittal under Fed. R. Crim. P. 29(c), the court must uphold the jury's guilty verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001) (citation and internal quotation marks omitted). Put another way, the court may set aside a jury's verdict only when no reasonable jury could have found the defendant guilty. *United States v. Dewberry*, 790 F.3d 1022, 1028 (10th Cir. 2015); *United States v. Magleby*, 241 F.3d 1306, 1312 (10th Cir. 2001).

When reviewing a defendant's sufficiency of the evidence claim, the court "must ask only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find [the defendant] guilty beyond a reasonable doubt." *Magleby*, 241 F.3d at 1311–12 (citation and internal quotation marks omitted). "[T]he evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." *Id.* at 1112 (citation and internal quotation marks omitted). And

"where conflicting evidence exists," the court must "not question the jury's conclusions regarding the credibility of witnesses or the relative weight of evidence." *Id.* Instead, the court simply must "determine whether [the] evidence, if believed, would establish each element of the crime." *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001) (quoting *United States v. Evans*, 42 F.3d 586, 589 (10th Cir. 1994)). The court thus must give "considerable deference to the jury's verdict." *Dewberry*, 790 F.3d at 1028 (citation and internal quotation marks omitted). Although the court's review is deferential, the evidence must do "more than raise a mere suspicion of guilt." *Id.* (internal quotation marks and citation omitted). And, any inferences drawn from direct and circumstantial evidence "must be more than speculation and conjecture to be reasonable." *Id.* (citation and internal quotation marks omitted).

### B.  Analysis

Mr. Pflum asserts that the government presented insufficient evidence for a rational jury to convict him beyond a reasonable doubt of the counts charged. The court addresses the two counts of conviction separately, below.

### 1.  Count 1:  Attempting to Evade and Defeat the Payment of Income Tax

Count 1 charged Mr. Pflum with attempting to evade and defeat the payment of income tax in violation of 26 U.S.C. § 7201. To secure a conviction under § 7201, the government must prove beyond a reasonable doubt that:  (1) the defendant owed substantial income tax; (2) the defendant intended to evade and defeat the payment of that tax; (3) the defendant committed an affirmative act in furtherance of this intent; and (4) the defendant acted willfully, that is, with the voluntary intent to violate a known legal duty. *See* 10th Cir. Crim. Pattern Jury Instruction No. 2.92 (2011); *see also United States v. Meek*, 998 F.2d 776, 779 (10th Cir. 1993) ("To obtain a conviction for evasion, the government must prove three elements:  1) the existence of a

substantial tax liability, 2) willfulness, and 3) an affirmative act constituting an evasion or attempted evasion of the tax.")

For the first element, the government need not prove the exact amount of the tax due—just that the tax liability is substantial. *See United States v. Mounkes*, 204 F.3d 1024, 1028 (10th Cir. 2000) (holding that the government had proved substantial tax liability because the "evidence showed that the [defendants'] bank deposits and cash expenditures exceeded their reported income after adjustments for applicable exemptions and deductions. Such evidence supports an inference that defendants had unreported income."). "Whether the tax evaded was substantial is a jury question and generally not susceptible to a precise definition." 10th Cir. Crim. Pattern Jury Instruction No. 2.92 cmt. (2011); *see also Canaday v. United States*, 354 F.2d 849, 851–52 (8th Cir. 1966) ("The word 'substantial,' as applicable here, is necessarily a relative term and not susceptible of an exact meaning.").

The third element—the requirement of an affirmative act—"distinguishes the offense of evasion from the misdemeanor offense of willful failure to file a tax return." *Meek*, 998 F.2d at 779. "An affirmative act requires more than the passive failure to file a tax return; rather, it requires a positive act of commission designed to mislead or conceal." *Id.* The misstatement of one's income is an affirmative act sufficient to sustain a jury's conviction for tax evasion. *See United States v. Jones*, 816 F.2d 1483, 1488 (10th Cir. 1987) ( "Defendant's filing of his tax returns with the knowledge that he should have reported more income is sufficient to sustain the jury's conclusion that defendant willfully attempted to evade taxes." (citing *Sansone v. United States*, 380 U.S. 343, 351–52 (1965))).

Here, the government presented evidence sufficient for a reasonable jury to find that the government proved each one of the elements essential to a tax evasion conviction under 26

U.S.C. § 7201. At trial, the government presented evidence that Mr. Pflum owed substantial income tax. The evidence included the federal income and employment tax returns that Mr. Pflum had filed for tax years 1997 through 2007. By his own admission, the tax returns reported Mr. Pflum's total income as $7,700,494.00 and claimed he owed $2,663,854.23 in federal income and employment taxes. The government also presented evidence that Mr. Pflum had earned income from the sale of his business in 2006. The government thus presented sufficient evidence of the first element.

The government also presented sufficient evidence of the second, third, and fourth elements. The government presented evidence that Mr. Pflum committed affirmative acts in furtherance of his intent to evade and defeat the payment of the tax that he owed the government. And, the jury could infer from the circumstantial evidence that Mr. Pflum's conduct was willful. Indeed, the jury specifically found that the government had presented evidence of and proved beyond a reasonable doubt that Mr. Pflum committed certain affirmative acts. Specifically, this evidence included the affirmative acts of: (1) "submitting false financial statements claiming $472.75 in assets and $470.00 per month income, when in truth and in fact [Mr. Pflum] owned over $2 million in real estate and received monthly income of over $16,000;" (2) "instructing third parties, such as renters, potential buyers, and others indebted to [Mr. Pflum] to ignore collection efforts by the Internal Revenue Service;" and (3) "threatening legal action against third parties who complied with the Internal Revenue Service's collection efforts." Doc. 179 at 2–3. Viewing the evidence in the light applied to a Rule 29(c) motion, the court concludes that a rational jury could have reached the very same verdict that this jury reached.

### 2. Count 2: Corruptly Endeavoring to Obstruct and Impede the Due Administration of the Internal Revenue Laws

Count 2 charged Mr. Pflum with corruptly endeavoring to obstruct and impede the due

administration of the Internal Revenue laws in violation of 26 U.S.C. § 7212(a).  To secure a conviction under § 7212(a), the government must prove beyond a reasonable doubt that:  (1) the defendant, in any way corruptly, (2) endeavored (3) to obstruct or impede the due administration of the Internal Revenue laws.  *United States v. Sorensen*, 801 F.3d 1217, 1225 (10th Cir. 2015).  "To act 'corruptly' is to act with intent to gain an unlawful advantage or benefit either for oneself or for another."  *Id.* (citations and internal quotation marks omitted).  "'Endeavor' means to knowingly and intentionally make any effort which has a reasonable tendency to bring about the desired result.  It is not necessary for the government to prove that the 'endeavor' was successful."  *See id.* at 1229 (affirming the district court's use of this definition in the jury instructions).

The government presented sufficient evidence at trial for a reasonable jury to find Mr. Pflum guilty beyond a reasonable doubt of violating 26 U.S.C. § 7212(a).  The evidence established that Mr. Pflum owed more than $2.6 million in federal taxes.  It was reasonable for the jury to infer that Mr. Pflum acted corruptly—that is, with the intent to gain an unlawful advantage—when he failed to pay the federal taxes that he owed to the government.  The government thus presented sufficient evidence of the first element.  *See United States v. Marinello*, 839 F.3d 209, 225 (2d Cir. 2016) (holding that evidence that the defendant failed to provide complete and accurate information of his personal and corporate income was sufficient for the jury to convict the defendant of corruptly obstructing or impeding the due administration of the Internal Revenue Code in violation of § 7212(a)).

The government also presented evidence of specific acts that Mr. Pflum had committed to endeavor to obstruct or impede the due administration of the Internal Revenue laws.  And, the jury found that the government had proved these affirmative acts beyond a reasonable doubt.

The affirmative acts included: (1) "submitting false financial statements claiming $472.75 in assets and $470.00 per month income, when in truth and in fact [Mr. Pflum] owned over $2 million in real estate and received monthly income of over $16,000;" (2) "transferring assets to fictitious entities and to third parties, in an attempt to conceal these assets from the Internal Revenue Service by [creating a] Grant Deed attempting to transfer ownership interest of 500 MacDonald, San Juan, WA from Pilot Enterprises, LLC to Friday Harbor, LLC;" (3) "instructing third parties, such as renters, potential buyers, and others indebted to [Mr. Pflum] to ignore collection efforts by the Internal Revenue Service;" and (4) "threatening legal action against third parties who complied with the Internal Revenue Service's collection efforts." Doc. 179 at 6–7. The government thus presented sufficient evidence of the second and third elements to support a conviction under § 7212(a).

Taking this evidence in the light most favorable to the government, it was sufficient for the jury to find Mr. Pflum guilty beyond a reasonable doubt of corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue laws. The court thus denies Mr. Pflum's Motion for Judgment of Acquittal.

### III.  Pro Se Motions

The court now turns to address three pro se motions that Mr. Pflum has filed after he terminated his counsel's representation.

#### A.  Motion to Dismiss Indictment

Mr. Pflum has filed a Motion to Dismiss Indictment, asserting that the court lacks subject matter jurisdiction over this action. Doc. 188. Thus, Mr. Pflum asks the court to dismiss the action with prejudice for lack of jurisdiction. *Id.* To support his motion, Mr. Pflum asserts the same arguments that he has made throughout this case. The court has rejected them repeatedly

in other orders.  *See* Docs. 62, 141, 147, 154.  Mr. Pflum again argues that the United States

Attorney and Assistant United States Attorneys lack the required credentials to prosecute him.

Doc. 188 at 2–3.  Mr. Pflum also argues again that he is a "Non-resident, NON-person," who is

not subject to the federal tax laws in this jurisdiction.  *Id.* at 9, 10.  For the same reasons it has

rejected these arguments in other orders, the court again denies Mr. Pflum's Motion to Dismiss

the Indictment.  These arguments lack any valid basis in the law.  And, Mr. Pflum provides no

reason for the court to change its earlier rulings rejecting these arguments.

Mr. Pflum's motion also attacks his counsel's performance at trial.  To the extent Mr.

Pflum's post-trial trial motion asserts an ineffective assistance claim against Mr. Fowler, the

court denies it.  To challenge a conviction based on ineffective assistance, a convicted defendant

must show that counsel's assistance was so defective that it requires reversal of the conviction.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  This showing consists of two components.

*Id.*  First, "the defendant must show that counsel's performance was deficient."  *Id.*  This requires

showing that counsel did not provide "reasonably effective assistance."  *Id.*  "Second, the

defendant must show that the deficient performance prejudiced the defense."  *Id.*  "This requires

showing that counsel's errors were so serious as to deprive the defendant of a fair trial."  *Id.*

Mr. Pflum argues that Mr. Fowler's performance was deficient in several ways.  First,

Mr. Pflum asserts that his counsel should have objected when the court informed the jury during

voir dire that Mr. Pflum was once a business owner.  Mr. Pflum asserts that this information

tainted the jury because he had not owned a business in 12 years.  Mr. Fowler's performance was

not deficient because he did not object to this statement.  The court accurately described Mr.

Pflum as having owned a business in the past—a fact that was confirmed by the evidence

presented at trial.  This information did not taint the jury.  It also provides no reason to find Mr.

Fowler's performance deficient.

Second, Mr. Pflum criticizes Mr. Fowler for making no objections to Agent Herron's testimony. Mr. Pflum claims that Mr. Herron perjured himself because he testified that he was a government agent but did not show his credentials. Mr. Pflum cites no law to support this argument. And the court is aware of none. This argument is utterly meritless. Mr. Pflum also contends that Agent Herron provided improper hearsay testimony, but he provides no specific examples. Without a more specific argument, the court cannot determine whether Mr. Fowler was deficient because he failed to object to improper hearsay testimony. Mr. Pflum also argues that Mr. Herron lacked knowledge to testify about Mr. Pflum's handwriting, the imposition of tax liens, and the definitions of words like "deeds," "grants," "loans," and "mortgages." The court disagrees. Mr. Herron's testimony established that these matters were within his personal knowledge. He thus could testify about them consistent with Fed. R. Evid. 602. Mr. Fowler thus was not deficient for raising no objections to this testimony.

Third, Mr. Pflum argues that Mr. Fowler's performance was deficient because he never objected to certain jury instructions. Mr. Pflum states that on "the last day of trial, several jurors had issues with the instruction" because it used the word "assessment." Doc. 188 at 7; *see also* Doc. 203 at 9 (stating in another one of Mr. Pflum's post-trial motions that "[a] juror asked about the exact 'assessment' during deliberations"). The court is not aware of any juror confusion about the word "assessment." Mr. Pflum's description of juror confusion appears nowhere in the record, the parties never raised this issue with the court, and the jurors never questioned the court about the instructions' use of the word "assessment."[7] Indeed, it would have been difficult for the word "assessment" to create confusion: The jury instructions never use that word. So, it's

---

[7]     The jurors submitted other questions during their deliberations. *See* Docs. 177, 178. None of these questions involved the word "assessment," or any confusion about it.

hard to understand Mr. Pflum's complaint. The record reveals, however, that Mr. Fowler objected to several of the other proposed instructions during the court's instruction conference. Mr. Fowler provided competent advocacy for his client during this phase of the trial, and his performance was not deficient in this regard.

Fourth, Mr. Pflum contends that Mr. Fowler's performance was deficient because he failed to move for a mistrial or object to the way the court handled a juror comment. During trial, the court told the parties, outside of the jury's presence, that it had received a report that a juror had overheard another juror say that the IRS would come after the jurors if they did not find Mr. Pflum guilty. The court explained that the identity of the juror who made the comment was unknown. The court also explained that the juror reporting the comment did not know the context of the comment—whether it was made in jest or something else. The parties discussed this situation with the court at some length without the jury present. Mr. Pflum was present and participated in those discussions. Both parties expressed concern that individual interviews with each juror might draw more attention to the comment than necessary. So, the court, after consulting with the parties, decided not to discuss the comment with the jurors individually.

During the court's discussion with the parties, Mr. Fowler acknowledged that he had contemplated requesting a mistrial based on the comment. And, although Mr. Fowler was tasked with the strategic decisions at trial, he asked Mr. Pflum about his position on the request. According to Mr. Fowler, Mr. Pflum did not want to move for a mistrial. The court confirmed Mr. Fowler's report, asking Mr. Pflum directly if that still was his position. Mr. Pflum confirmed on the record that he did not wish to seek a mistrial.

At the conclusion of the trial, the court included an instruction to the jury about this comment. Doc. 176 at 44. The court directed the jury to disregard the comment in deliberations

and decide the case based only on the evidence presented at trial and the law as provided in the jury instructions. *Id.* The court also provided another instruction that directed the jury to reject rumors, suspicions, or anything else they had seen outside the courtroom, but to consider the case based only on the evidence presented. *Id.* at 7. And, another instruction directed the jurors to decide the case without bias and mandated that the jury base its verdict only on the evidence in the case and the law that applies to it. *Id.* at 32. The court adequately addressed the concern raised by the juror comment, and Mr. Fowler's performance in response to the situation was not deficient.

Finally, Mr. Pflum asserts that Mr. Fowler's performance was deficient because he purportedly mocked his client during closing arguments. This is a fanciful assertion. Mr. Fowler never mocked his client. At one point in the argument, Mr. Fowler likened Mr. Pflum's belief that he is not subject to the federal income tax laws to those of people who believe the moon landing was a hoax or that Galileo was wrong in his assertion that the earth is round. Mr. Pflum contends that he is unlike the people described in closing argument because his beliefs about federal tax law are grounded in truth. *See* Doc. 188 at 7 (citing the law and treatises that Mr. Pflum contends make him a sovereign citizen who is not subject to the federal tax laws). Thus, the court understands Mr. Pflum to argue that his lawyer mocked him by comparing his beliefs (ones that he contends are supported by the truth) to others' beliefs that clearly have no factual basis. But, Mr. Pflum is incorrect about the truthfulness of his position. The court repeatedly has rejected his arguments that he is not subject to the federal tax laws because they have no valid basis in law. Mr. Fowler never mocked his client when he made the comments about his client's beliefs.

The court also notes that it entered an order prohibiting Mr. Pflum from asserting such

meritless arguments at trial. Doc. 154. Mr. Fowler was obligated to follow this ruling. He also

is bound by Rules of Professional Conduct that prohibit a lawyer from asserting an argument

"unless there is a basis for doing so that is not frivolous, which includes a good faith argument

for an extension, modification or reversal of existing law." Kan. R. Prof'l Conduct 3.1. Mr.

Fowler's performance was not deficient because he refused to assert the frivolous arguments that

Mr. Pflum wanted him to make. To the contrary, his performance complied with the court's

orders and the rules governing attorney conduct.

Because Mr. Pflum has not shown that his counsel's performance was deficient, he

cannot satisfy the first component of the *Strickland* test. But, even if he could, Mr. Pflum also

fails to make the required showing for the second component. Mr. Fowler's actions were not so

serious that they deprived Mr. Pflum of a fair trial. The government presented sufficient

evidence for the jury to find beyond a reasonable doubt that Mr. Pflum had attempted to evade

paying taxes and that he corruptly endeavored to obstruct the due administration of the Internal

Revenue laws. Mr. Pflum does not show how Mr. Fowler's actions prejudiced him such that the

jury could have reached a different outcome in response to the government's evidence at trial.

The court thus rejects any ineffective assistance of counsel that Mr. Pflum asserts against Mr.

Fowler.

### B. Motion for Release from Custody

Mr. Pflum also has filed a Motion for Release from Custody. Doc. 196. The motion

asserts that the government failed to respond timely to his Motion to Dismiss Indictment (Doc.

188). Thus, Mr. Pflum contends that the government has admitted the facts contained in that

motion including that Mr. Pflum is a non-resident, non-person and not a United States citizen.

Mr. Pflum asserts that these purported admissions require the court to dismiss the case and

release him from custody.  So, he asks the court to enter an order releasing him from custody immediately and directing his transport to the airport in Leavenworth, Kansas or Kansas City International MCI Airport.  Why he wishes to go to one of these airports is something he never explains.

The government has responded to this motion by filing a Motion for Order Denying Doc. 196.  Doc. 199.  The government asserts that Mr. Pflum filed his pro se Motion to Dismiss Indictment (Doc. 188) the same day that the court considered his motion to terminate Mr. Fowler's services.  At the hearing, the court ordered Mr. Pflum to file a statement stating whether he intended to stand on the Motion for Judgment of Acquittal filed by Mr. Fowler or file a new motion by March 27, 2017.  Doc. 187.  The court gave the government until April 10, 2017, to file a supplemental response.  *Id.*  The government submitted its response to Mr. Pflum's Motion to Dismiss Indictment on April 10, 2017.  *See* Doc. 198.  The government thus asserts that its response is timely.  And, it argues that it never defaulted on the arguments Mr. Pflum asserts.

The government is right:  Mr. Pflum's motion provides no reason for the court to accept as true the facts contained in his Motion to Dismiss Indictment.  To the contrary, the court rejects the arguments he makes in that motion for reasons already explained.  Mr. Pflum is not entitled to a dismissal of the case or release from custody.  The court thus denies his motion.

### C.  Motion for Order to Move Case to District of South Dakota

Finally, Mr. Pflum has filed a Motion for Order to Move the Case to the United States District Court for the District of South Dakota.  Doc. 203.  This motion asserts many of the same arguments that the court already has addressed and rejected.  Mr. Pflum asserts that the court lacks subject matter and personal jurisdiction because:  (1) Mr. Pflum is an American National

(Doc. 203 at 2–6); (2) the prosecutor lacks valid credentials (*id.* at 6–7); (3) Mr. Pflum's trial counsel was negligent (*id.* at 8–10); and (4) no evidence existed to support the convictions (*id.*). For the reasons explained above, these arguments provide no reason for the court to dismiss the case for lack of jurisdiction.

Mr. Pflum also asks the court to transfer the case to the United States District Court for the District of South Dakota—specifically to Senior Judge Lawrence L. Piersol. The court is not aware of any authority that allows it to reassign a case to a specific United States District Judge. And, although the court has authority to transfer the case to another district (but not to a specific judge), Mr. Pflum has not shown that a transfer is warranted here. Indeed, Mr. Pflum never explains why the court should transfer the case to South Dakota—as opposed to some other location. The only reason he provides for transfer is his claim that the trial and verdict in this court were fraudulent and violated the law.

Fed. R. Crim. P. 18 provides:

> Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant and the witnesses, and the prompt administration of justice.

Here, the government has prosecuted the case against Mr. Pflum in Kansas because it is the judicial district where he committed the charged offenses. *See* Doc. 100 ¶¶ 6, 8 (charging in the Superseding Indictment that Mr. Pflum is a resident of St. Marys,[8] Kansas and that he committed the crimes in the District of Kansas). The government thus has complied with Fed. R. Crim. P. 18.

But, Fed. R. Crim. P. 21 allows a defendant to move the court to transfer a criminal case.

---

[8] The City of St. Marys, Kansas, where Mr. Pflum lived when indicted, uses no apostrophe in its name.

Under Fed. R. Crim. P. 21(a), the court "must transfer the proceeding against th[e] defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." And, under Fed. R. Crim. P. 21(b), the court "may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." The Supreme Court has provided the following factors for courts to consider when determining whether to transfer a criminal case: "(1) location of . . . defendant; (2) location of possible witnesses; (3) location of events likely to be an issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless case is transferred; (6) expense of the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer." *Platt v. Minn. Mining Co.*, 376 U.S. 240, 243–44 (1964). The defendant bears the burden to show that a transfer is warranted under Rule 21(b). *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001). "[C]hange of venue in a criminal case is discretionary, and a trial judge's decision on the matter is entitled to deference." *United States v. Williams*, 897 F.2d 1034, 1036 (10th Cir. 1990) (quoting *United States v. Hunter*, 672 F.2d 815, 816 (10th Cir. 1982)).

Here, Mr. Pflum provides no reason that the District of South Dakota is a more convenient location for this case. He cites none of the above-factors. And, even if he had, the court finds that most of these factors counsel against transfer. The defendant, counsel, and most of the witnesses, events, and documents are located in Kansas. In fact, the court finds that a transfer of the case from Kansas would produce great inconvenience. The court thus declines to transfer the case under Fed. R. Crim. P. 21(b).

Mr. Pflum also has not shown that a transfer is required to avoid prejudice under Fed. R. Crim. P. 21(a). Mr. Pflum has not shown that he received an unfair trial in Kansas. His assertions that his trial was fraudulent are based on his meritless arguments that the court lacks subject matter and personal jurisdiction and that the prosecutor has defective credentials. These arguments fail to demonstrate prejudice and provide no reason for the court to transfer the case. The court thus denies Mr. Pflum's Motion for Order to Move the Case to the United States District Court for the District of South Dakota.

## IV.    Conclusion

The court denies Mr. Pflum's post-trial motions for the reasons explained above.

**IT IS THEREFORE ORDERED THAT** defendant David G. Pflum's Motion for Judgment of Acquittal (Doc. 182) is denied.

**IT IS FURTHER ORDERED THAT** defendant David G. Pflum's Motion to Dismiss Indictment (Doc. 188) is denied.

**IT IS FURTHER ORDERED THAT** defendant David G. Pflum's Motion for Release from Custody (Doc. 196) is denied.

**IT IS FURTHER ORDERED THAT** defendant David G. Pflum's Motion for Order to Move Case to the United States District Court for the District of South Dakota (Doc. 203) is denied.

**IT IS FURTHER ORDERED THAT** the government's Motion for Order Denying Doc. 182 (Doc. 197) and Motion for Order Denying Doc. 196 (Doc. 199) are granted.

**IT IS SO ORDERED.**

Dated this 10th day of May, 2017, at Topeka, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge